# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

GREGORY COOPER,

Plaintiff,

v.

WARDEN WILLIAM TRUE,

Defendant.

Case No. 0:16-cv-02900-MJD-KMM

**REPORT AND RECOMMENDATION**

Kaitlyn Leeann Dennis, Gustafson Gluek PLLC, 120 South 6th Street, Ste. 2600, Minneapolis, MN 55402, counsel for plaintiff

Ana H. Voss, Bahram Samie, and D. Gerald Wilhelm, Assistant United States Attorneys, United States Attorney's Office, 300 S. 4th Street, Suite 600, Minneapolis, MN, 55415, counsel for defendants

This matter is now before the Court on the Defendant Warden William True's Motion to Dismiss the Amended Complaint. [Def.'s Mot., ECF No. 49.] Based on the Defendant's motion and supporting papers, Mr. Cooper's response, and the arguments presented at the September 5, 2017 hearing, the Court concludes that Mr. Cooper has failed to state a claim and the motion to dismiss should be granted.

I. **The Amended Complaint**[1]

Mr. Cooper is a federal inmate who was housed at the Federal Prison Camp in Duluth, Minnnesota ("FPC Duluth"), a minimum-security federal prison camp. [Am. Compl. ¶¶ 11-12, ECF No. 42.] He is an observant Jew, and the practice of his religion requires access to a Torah, a rabbi, and a minyan, the last of which is a quorum of ten adult Jewish men. [*Id.* ¶¶ 2, 11, 18, 19.] Mr. Cooper alleges that in 2016, a rabbi visited FPC Duluth only once for the Jewish holiday of Purim, and that the prison failed to provide a Torah. [*Id.* ¶ 28.] Because FPC Duluth does not have a sufficient population of observant adult Jewish men, no minyan could be convened while Mr. Cooper was confined there. Mr. Cooper requested that he be transferred to another facility with a Jewish population sufficient to form a minyan. [*See id.* ¶¶ 24, 29; *id.* ¶¶ 31-39 (describing plaintiff's efforts to obtain a transfer).]

Warden True was formerly the Warden at FPC Duluth and he held that position at the time when Mr. Cooper arrived there in January 2016. [Am. Compl. ¶¶ 13, 25.] Mr. Cooper quickly informed Warden True that he was unable to practice his faith without a rabbi, a Torah, and a minyan. In response, Warden True informed Mr. Cooper that he would have to wait eighteen months before requesting a transfer. [*Id.* ¶ 25; *see also id.* ¶ 34.] Despite having told Mr. Cooper that he would need to wait eighteen months to request a transfer, after Mr. Cooper began officially pursuing administrative remedies relating to the matter, Warden True submitted a transfer

---

[1] When he originally filed this case as a pro se plaintiff, Gregory Cooper asserted claims against several defendants for violating his constitutional rights by preventing him from practicing his religion. Mr. Cooper is now represented by a volunteer attorney and has amended his complaint. After counsel's appearance on Mr. Cooper's behalf, the parties significantly narrowed the issues remaining in this litigation by stipulation. Pursuant to the parties' stipulation, the District Court dismissed several defendants from this action, including the U.S. Bureau of Prisons and Bureau of Prisons Designation and Sentence Computation Center employees E.R.H. and R.L.S. [Order, ECF No. 63.] The only remaining Defendant is Warden William True, and the Court will focus its discussion on those aspects of this case that concern him.

request on his behalf on August 11, 2016. [*Id.* ¶¶ 34-35.] The transfer request recommended that Mr. Cooper be transferred to a facility where he "could better participate in his faith." [*Id.* ¶ 35.] In the transfer request, Warden True did not mention that Mr. Cooper's religious practice required a rabbi, a Torah, and a minyan despite Mr. Cooper telling him that all three were necessary for him to practice is faith. [*Id.* ¶ 36.] The transfer request was eventually denied.

After Warden True made the transfer request on Mr. Cooper's behalf, his time as warden of FPC Duluth ended. The new Warden, identified as "M. Rios," also submitted a transfer request for Mr. Cooper on January 5, 2017, and specifically referenced the need for a Jewish population sufficient to form a minyan. [Am. Compl. ¶ 37.] This request was denied at various levels of the Bureau of Prisons' administrative appeal process. [*Id.* ¶¶ 38-39.]

Based on these allegations, in Count I of the Amended Complaint Mr. Cooper asserts a *Bivens*[2] claim against Warden True for violation of his First Amendment rights under the Free Exercise Clause. [Am. Compl. ¶¶ 40-46.] Mr. Cooper claims that Warden True's actions constitute an unreasonable restriction on his right to exercise his religion, that Warden True knew or should have known that such conduct violated his constitutional rights, and that he suffered damages as a direct and proximate result of Warden True's actions. [*Id.*]

In Count II, Mr. Cooper asserts a claim against Warden True under the Religious Freedom Restoration Act ("RFRA"). [Am. Compl. ¶¶ 47-53.] Mr. Cooper asserts that: (1) Warden True imposed a substantial burden on his ability to exercise his religion by keeping him housed at a facility without access to a rabbi, a Torah, and minyan; and (2) keeping him at FPC Duluth was not the least restrictive means of furthering a compelling government interest. [*Id.* ¶ 49.] He claims that Warden True submitted the August 11th transfer request on his behalf knowing that it contained a

---

[2]   *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

3

grossly inadequate explanation of the reasons a transfer was required, making Warden True liable in both his individual and official capacities. [*Id.* ¶ 51.]

In the Amended Complaint, Mr. True requested both damages and an injunction requiring his transfer to a facility where a rabbi, a Torah, and a minyan population were available. [Am. Compl., Prayer for Relief ¶¶ c-d.] Mr. Cooper is no longer housed at FPC Duluth. [Pl.'s Resp. at 2 n.1, ECF No. 60.] Now, Mr. Cooper is located at a United States Penitentiary facility that is "capable of providing the fundamental religious resources [Mr. Cooper] lacked access to in his 19-month tenure at FPC Duluth." [*Id.*] Given this development, and in light of the parties' stipulation for dismissal of a number of other defendants, the remaining issues in this case are limited to the availability of damages for Warden True's alleged violation of Mr. Cooper's First Amendment rights and the RFRA.

## II. Discussion

Warden True argues that Mr. Cooper has failed to state a claim against him in Count I of the Amended Complaint because there is no *Bivens* remedy for alleged violations of the First Amendment's Free Exercise Clause. [Def.'s Mem. at 13-19, ECF No. 51.] He further argues that in Count II, Mr. Cooper has failed to state a claim under RFRA because the statute does not permit the recovery of damages from a government official sued in his individual capacity. [Def.'s Mem. at 19-28.] Finally, Warden True contends that he is entitled to qualified immunity on Mr. Cooper's claims. [*Id.* at 28-30; Def.'s Reply at 8-9, ECF No. 61.]

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 500 U.S. 544, 570 (2007). This standard does not require the inclusion of "detailed factual allegations" in a pleading, but the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

4

(citing *Twombly*, 550 U.S. at 555). In applying this standard, the Court must assume the facts in the complaint to be true and must construe all reasonable inferences in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). But the Court need not accept as true any wholly conclusory allegations, *Hanten v. School District of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts pled, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

### *Bivens* Claim – Free Exercise Clause

Warden True persuasively argues that *Bivens* does not allow for a claim against a federal official for violations of the Free Exercise Clause. [*See* Def.'s Mem. at 13-19.] As Warden True points out, the Supreme Court has not previously recognized a *Bivens* claim for violations of the Free Exercise Clause. *See Iqbal*, 556 U.S. at 675 ("[W]hile we have allowed a *Bivens* action to redress a violation of the equal protection component of the Due Process Clause of the Fifth Amendment, we have not found an implied damages remedy under the Free Exercise Clause."). Nor has the Eighth Circuit. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 n.6 (8th Cir. 2008) ("We have never found a *Bivens* action to extend to a Free Exercise claim, and it is doubtful that we would do so.").

Warden True also cogently argues that it would be inappropriate to expand the *Bivens* remedy to include Free Exercise claims. Earlier this year, the Supreme Court referred generally to the expansion of the *Bivens* remedy as "disfavored." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (citing *Iqbal*, 556 U.S. at 675). "Indeed, the Court has refused to [extend *Bivens* to any new context or category] for the past 30 years." *Id.* A *Bivens* remedy in a new area "will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress," *id.* at 1857-58, and "if there is an alternative remedy structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action," *id.* at 1858 (internal quotations omitted). Where "Congress has created any alternative, existing process for protecting the injured party's interest that itself may amount to a

5

convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id.* at 1858 (internal quotations and brackets omitted). The RFRA may be just such an alternative, existing process for protecting an injured party's interest where free exercise rights are involved. When it enacted RFRA after the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990), Congress created a means for an individual to assert a claim where government action substantially burdens religious exercise. *See* 42 U.S.C. § 2000bb(b) (providing that the purpose of RFRA is to restore a compelling interest test and "guarantee its application in all cases where free exercise of religion is substantially burdened" and "to provide a claim or defense to persons whose religious exercise is substantially burdened by the government").

For these reasons, it is unlikely as a matter of law that Mr. Cooper can raise a *Bivens* claim for Free Exercise violations. However, the Court need not definitely resolve the availability of such relief in this case. Even if a *Bivens* remedy could exist for a Free Exercise claim, Mr. Cooper has failed to state such a claim in the Amended Complaint. Based on the facts alleged in Mr. Cooper's pleading, Warden True is entitled to qualified immunity.

At this stage, the Warden "'must show that [he is] entitled to qualified immunity on the face of the complaint.'" *Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016). "'Qualified immunity shields government officials from liability for civil damages for discretionary acts that do not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Moore ex rel. Moore v. Briggs*, 381 F.3d 771, 772 (8th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This involves "a two-pronged analysis" asking: first "'whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and [second] whether the right was clearly established at the time of the alleged infraction." *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) (quoting *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013)). A district court may

6

consider either of these prongs first, and if either is not met, the analysis ends. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Warden True has shown that he is entitled to qualified immunity on the face of the complaint because the law did not clearly establish that his alleged conduct violated Mr. Cooper's free exercise rights at the relevant time. Mr. Cooper alleges that Warden True violated his free exercise rights when he submitted a transfer request without sufficiently specifying that Mr. Cooper's religious practice required a rabbi, a Torah, and a minyan. However, at the time Warden True issued the transfer request at issue, there was no case that clearly established a constitutional requirement that a prison official must include the specific reasons an inmate's transfer is required when completing a transfer request on the inmate's behalf. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is whether the violative nature of particular conduct is clearly established.") (quotation omitted).

Mr. Cooper argues that "Defendant True failed to make appropriate and sincere efforts to accommodate Plaintiff's fundamental religious needs." [Pl.'s Resp. at 13.] The Court is unaware of any decision, and Mr. Cooper points to none, which has clearly established that a prison official violates an inmate's right to free exercise of religion where he does not make "appropriate and sincere efforts" to accommodate the inmate's religious needs.

The Supreme Court has recently reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Rather, "the clearly established law must be particularized to the facts of the case . . . [o]therwise plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (internal quotations, citations, and alterations omitted). Certainly, this does not mean that existing precedent exactly on point is required to demonstrate that the unconstitutionality of the government official's conduct was clearly established. *See Winslow v. Smith*, 696 F.3d 716, 738 (8th Cir. 2012) ("A general

7

constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful."). But Mr. Cooper's framing of the issue sets the question before the Court at a high level of generality—not one particularized to the facts of the case—and he makes no reference to even a general rule that may apply to these facts with obvious clarity.

To be clearly established for purposes of the qualified immunity analysis "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Mahers v. Harper*, 12 F.3d 783, 785 (8th Cir. 1993). Here, the Court cannot say that the contours of the right Mr. Cooper asserts under the Free Exercise Clause were so clear that Warden True would understand that submitting the transfer request in the manner he did was constitutionally inadequate. Because such a right was not clearly established at the time of Warden True's transfer request, the Court declines to consider whether the particular free exercise right Mr. Cooper asserts exists at all. *See Reichle v. Howards*, 566 U.S. 658, 664 (2012) (noting the Supreme Court's "reluctance to decide constitutional questions unnecessarily").

The Court concludes that on the face of the Amended Complaint, Warden True is entitled to qualified immunity and Mr. Cooper has failed to state a claim for which relief can be granted. As a result, the *Bivens* claim asserted in Count I of Mr. Cooper's Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**RFRA Claim**

As noted above, Mr. Cooper claims that Warden True violated RFRA when he submitted the August 11th transfer request on Cooper's behalf because he knew it inadequately explained the reasons a transfer was required and was not a sufficiently sincere effort to achieve his transfer. [*See* Am. Compl. ¶ 51.] Mr. Cooper asserts that

Warden True is liable in both his individual and official capacities, [*id.*] but it appears only an individual capacity claim is squarely presented.[3]

Warden True moves to dismiss Mr. Cooper's individual capacity damages claim under RFRA pursuant to Rule 12(b)(6) for several reasons. First Warden True argues that Mr. Cooper's individual capacity damages claim under RFRA fails because RFRA only allows recovery of "appropriate relief against a government." [Def.'s Mem. at 19-22.] Second, he argues that RFRA's provision permitting recovery of "appropriate relief" does not allow the recovery of damages from the federal government, state governments, or state officials, and should not be interpreted to allow individual capacity claims for damages. [*Id.* at 22-26.] Third, Warden True contends that RFRA's enactment was to provide substantive protection for the exercise of religion, but not to expand the available remedies, which is made clear by the enacted "purpose" section of the statute and Committee Reports associated with the bill. [*Id.* at 27-28.] And finally, Warden True asserts that Mr. Cooper's RFRA claim is barred by the doctrine of qualified immunity because there was no clearly established statutory right to have Warden True articulate the reasons for his transfer in a particular manner when Warden True made the August 11, 2016 transfer request on his behalf. [*See* Def.'s Reply at 8 ("[W]hether or not Plaintiff has stated a claim for relief under RFRA, he certainly has not identified that his right for a transfer was clearly established.").]

---

[3] Although Count II of the Amended Complaint purports to seek relief against Warden True in his official capacity, the parties do not discuss any official-capacity claims in their briefing. Mr. Cooper's submissions in particular do not suggest that such a claim is genuinely pursued as part of this litigation. Therefore, it is unclear whether such a claim needs to be addressed. However, an official-capacity claim against a federal official is considered a suit against the United States. *Searcy v. Donelson*, 204 F.3d 797, 798 (8thCir. 2000). And a RFRA claim for damages against the United States would be barred by sovereign immunity. *See Arafat v. U.S. Dep't of Justice*, No. 12-cv-3189 (ADM/FLN), 2013 WL 5964459, at *2 (D. Minn. Nov. 8, 2013) (dismissing damages claim against a federal government department on sovereign immunity grounds pursuant to Rule 12(b)(6)) (citing *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1025-26 (D.C.Cir.2006), and *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 839-41 (9th Cir.2012)).

The Religious Freedom Restoration Act provides that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless the burden is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering" that interest. 42 U.S.C. § 2000bb–1. A person whose religious exercise has been substantially burdened may "assert that violation as a claim . . . in a proceeding and obtain *appropriate relief* against a government." 42 U.S.C. § 2000bb–1(c) (emphasis added). The Eighth Circuit has explained what constitutes a "substantial burden" as follows:

> In order to be considered a "substantial" burden, the government action must 'significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person's] individual [religious] beliefs; must meaningfully curtail a [person's] ability to express adherence to his or her faith; or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion.'

*Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997) (quoting *In re Young*, 82 F.2d 1407, 1418 (8th Cir. 1996) (quoting *Werner v. McCotter*, 49 F.3d 1476, 1480 (10th Cir. 1995))). The RFRA provides that the term "'government' includes a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States. . . ." 42 U.S.C. § 2000bb–2(1).

Again, Warden True persuasively argues that RFRA does not allow a person to bring an individual capacity claim for damages against a federal official. Though the Eighth Circuit has not addressed the issue whether RFRA allows such a claim, three Circuit Courts of Appeals have concluded that RFRA's reference to "appropriate relief" does not permit official-capacity claims for monetary damages because RFRA's language does not waive sovereign immunity. *See Davila v. Gladden*, 777 F.3d 1198 (11th Cir. 2015); *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829 (9th Cir. 2012); *Webman v. Federal Bureau of Prisons*, 441 F.3d 1022 (D.C. Cir. 2006). The Supreme Court has also cautioned against interpreting statutory terms like "appropriate relief" to mean something different depending on categories of circumstances addressed in various cases. *See Clark v. Martinez,* 543 U.S. 371, 378

(2005) (providing that the same words in a statute should not be given a different meaning based on the category of circumstances addressed). Given the appellate decisions finding that "appropriate relief" does not allow for recovery of damages for official capacity claims and *Clark*'s principle of statutory interpretation, there is little reason to conclude that RFRA would allow recovery of money damages for individual-capacity claims.

Following an exhaustive and persuasive analysis of the relevant case law and RFRA's statutory language and purpose, a judge in the Southern District of New York concluded that RFRA does not allow a plaintiff to seek damages against federal officials in their personal capacities. *See Tanvir v. Lynch*, 128 F. Supp. 3d 756, 774-81 (S.D.N.Y. 2015), *appeal pending in Tanvir v. Comey*, No. 16-1176 (2d Cir. Apr 18, 2016). However, as Warden True acknowledges, district courts addressing the issue are split. *Compare id.* (finding RFRA does not authorize individual capacity damages claims), *and Ajaj v. United States*, No. 15-cv-992 (RBJ/KLM), 2016 WL 6212518 (D. Colo. Oct. 25, 2016) (same), *with* P*atel v. Bureau of Prisons*, 125 F. Supp. 3d 44, 53, 54 & n.1 (D.D.C. 2015) (holding RFRA permits individual capacity damages claims), *Crowder v. Lariva*, No. 2:14-cv-202 (JMS/MJD), 2016 WL 4733539 (S.D. Ind. Sept. 12, 2016) (same), *and Rezaq v. Fed. Bureau of Prisons*, No. 13-cv-990 (MJR/SCW), 2016 WL 97763 (S.D. Ill. Jan. 8, 2016) (same).

Ultimately, to decide the motion pending before the Court, it is unnecessary to resolve the interesting issue of the availability of damages in an individual capacity claim brought under RFRA. Warden True is entitled to qualified immunity on Mr. Cooper's RFRA claim even if the statute permits such relief. As with the *Bivens* claim discussed above, the Court cannot say that the contours of the statutory right Mr. Cooper asserts here were so clear that Warden True would understand that submitting the transfer request in the manner he did was inadequate under RFRA. The absence of such clearly established law warrants dismissal of a RFRA claim based on the doctrine of qualified immunity. *See Davila v. Gladden*, 777 F.3d 1198, 1210-12 (11th Cir. 2015) (declining to address whether RFRA authorizes suits against officers

11

in their individual capacities and concluding that the defendants were entitled to qualified immunity because the rights asserted by the plaintiff were not clearly established at the time of the defendants' allegedly improper conduct). Based on this conclusion, the Court need not consider whether RFRA imposes an obligation on a prison warden to make a transfer request in the manner Mr. Cooper claims.

Accordingly, Warden True is entitled to qualified immunity and Mr. Cooper has failed to state a claim for which relief can be granted. As a result, the RFRA claim asserted in Count II of Mr. Cooper's Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## Recommendation

Consistent with the opinion above, the Court makes the following recommendation:

1. Warden True's Motion to Dismiss **[ECF No. 49]** should be **GRANTED**.

2. This case should be **DISMISSED WITH PREJUDICE**.

Date: November 2, 2017                             *s/Katherine Menendez*
                                                   Katherine Menendez
                                                   United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may

respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.